Wilson, J.
This is an action in contract and tort, in the first count of which the plaintiff seeks to recover the sum of $35.00 for the production of a public performance of a dramatic composition called “There’s Always Juliet.” The second count is in tort for infringement of the copyright of said play owned by the plaintiff. The answer of the defendant, so far as now material, is a general denial.
At the trial there was evidence tending to show that the plaintiff was the owner of said dramatic composition and that the same was duly copyrighted under the laws of the United States of America. It also appeared that a public performance of said play, to which admission was *166 charged, was given in Lynn, Massachusetts; that the defendant participated therein as a substitute member of the cast and played one of the roles, replacing another actor who had been obliged to retire from the play several weeks before the actual performance. This was the defendant’s only connection with said production. The books containing the play and used by the defendant and the others in learning their roles were purchased by a Miss Stevens, who was a leader of a group of actors calling themselves the “Scott Players.” All said actors and Miss Stevens were minors, but the defendant was more than twenty-one years of age. It also appeared that Miss Stevens applied for and procured the books containing the play and agreed to pay the plaintiff the royalty of $35.00. She also engaged the hall for said production, had tickets printed and sold to the public, and collected all moneys for the same; that all of the Scott Players so-called were to share in the profits but there was no talk with the defendant about his sharing in the profits. The production was financially unsuccessful. The royalty was never paid, although payment was demanded from all those connected with the performance. All the books used by the persons participating in said performance contained the following:
“Caution: Professionals and amateurs are hereby wlarned that ‘There’s Always Juliet,’ being fully protected under the copyright laws of the United States of America, ... is subject to a royalty. All rights, including professional, amateur, . . . are strictly reserved. In its present form this play is dedicated to the reading public only. This play may be presented by amateurs upon the payment of a royalty of $35 for each performance pay *167 able to Samuel French, . . . one week before the day the play is given.”
The plaintiff seasonably presented to the trial court a request for ruling, which is as follows:
‘1 There is sufficient evidence in this case to warrant a finding for the plaintiff.”
This request was denied. It was argued by the defendant that this request was not applicable to count 2, which was in tort and was added by amendment after the trial, but examination of the docket and entries discloses that the trial was had on October 25, 1940; that the last amendment to the declaration was on November 8, 1940, and, although the plaintiff’s and defendant’s requests were filed on the same day, namely, November 8, 1940', the case was not decided until December 8, 1940, and therefore, all requests filed by either party were properly considered by the court before its decision was rendered.
We need not discuss property rights of the plaintiff in the play. Such rights have been recognized from very early times. See 2 Lewis’s Blackstone 407. It is not contended here that the performance of the play complied with the Copyright Act of the United States of America, Compiled Statutes of 1918, Section 9517, nor is it contended that the play performed did not violate the rights of the plaintiff.
The question for our determination is whether the defendant, who performed a role in said performance solely as a substitute for another who was originally cast in said role, is liable to the plaintiff. It is admitted that the defendant had no expectation of sharing in the profits had the performance been a financial success. The trial judge seems to have assumed that only the producer, namely, *168 Miss Stevens, was liable for the violation of the plaintiff’s rights in said play while the plaintiff contends that any person who participated in the performance is liable to it in damages.
It has been said that a copyright protects the captor of the idea, thereby giving him the exclusive property in his acquisition or creation. Werckmeister v. American Lithographing Company, 134 Fed. Rep. 321. The author of a work, whether it be a work of art, as in Werckmeister v. American Lithographing Company, supra, or a drama, as in the case at bar, has at common law a property therein until it is published with his consent. He may withhold or communicate it and in communicating it he may impose such restrictions as he sees fit.
The restriction contained in each book containing the play, which was in the possession of each of the actors, was notice in itself of the reservation placed upon its use by the owner thereof, and this was equally effective whether the plaintiff relied upon its rights at the common law or under the copyright statute. It was equally a reservation imposed upon the use of the play by the owner thereof. The right or property which an owner has in his works continues until by publication a right to such use has been conferred upon or dedicated to the public. If of a work of which a copyright has been obtained, it is so dedicated, subject to the protection afforded by the laws of copyright, the author accepting the statutory rights thereby given in place of his common law rights. Tompkins v. Halleck, 133 Mass. 32, 36.
By U. S. Compiled Statutes of 1918, Section 9517
“Any person entitled thereto, upon complying with the provisions of this Act, shall have the exclusive right:
*169 “(a) To print, reprint, publish, copy, and vend the copyrighted work;
‘ ‘ (b) To translate the copyrighted work into other languages or dialects, or make any other version thereof, if it be a literary work; to dramatize it if it be a nondramatic work; to convert it into a novel or other nondramatic work if it be a drama; to arrange or adapt it if it be a musical wiork; to complete, execute and finish it if it be a model or design for a work of art;
“(c) . . .
“(d) To perform or represent the copyrighted work publicly if it be a drama or, if it be a dramatic work and not reproduced in copies for sale, to vend any manuscript or any record whatsoever thereof; . . . ”
The play in question appears to have been properly copyrighted under said Act. Any person infringing upon the copyright granted under said Act shall be liable (a) to an injunction restraining such infringement; (b) damages and profits; and other penalties, all as provided by section 9546 of said statute.
It has been said that each and every one who took part in the performance came within the statute. Duck v. Mayeu, 2 Q. B. 511. See also Coppinger’s Copyright Cases on page 216.
It was said in Ted Browne Music Co. v. Fowler, 290 Fed. Rep. 751, 754:
‘ ‘ Courts have long recognized that infringement of a copyright is a tort, and all persons concerned therein are jointly and severally liable as such joint tortfeasors.”
See also Amdur Copyright Law and Practice (1936), page 971, and Henry v. Dick, 224 U. S. 1, where it was said:
“Contributory infringement is the intentional aiding of one person by another in the unlawful making, *170 or selling, or using of a third person’s patented invention. ’ ’
See also Buck v. Jewell-LaSalle Realty Company, 283 U. S. 191. 76 A. L. R. 1266, 1270, where it was said:
“Intention to infringe is not essential under the Act. . . . One who hires an orchestra for a public performance for profit is not relieved from a charge of infringement merely because he does not select the particular program to be played. Similarly, when he tunes in on a broadcasting station, for his own commercial purpose, he necessarily assumes the risk that in doing so he may infringe the performing rights of another.”
From what has been said, it seems clear that the defendant was in duty bound to see to it that the license under which he was to participate in the performance of the play was fully complied with by the payment of the royalty agreed, before he took part in the performance. It follows, therefore, that the judge erred in refusing the plaintiff’s request for ruling. Nor can we say that said request had become immaterial because of facts found by the trial judge, as in Strong v. Haverhill Electric Company, 299 Mass. 455; Home Savings Bank v. Savransky, Mass. Adv. Sh. (1940) 2115.
It is unnecessary for us to discuss in detail the requests for rulings filed by the defendant, because the refusal to give the request filed by the plaintiff was error prejudicial to it. The ease must be remanded to the District Court and a new trial ordered and, because on the record before us it appears that the defendant is liable to the plaintiff for an infringement of the copyright referred to, said new trial will be confined to an assessment of damages growing out of said infringement.